UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WHITE, INDIVIDUALLY,
and MICHAEL WHILE, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF DARLA K. WHITE, DECEASED,

                Plaintiff,                      No. 18-11590

v.                                   District Judge Robert H. Cleland
                                   Magistrate Judge R. Steven Whalen

MEDTRONIC, INC, ET AL.,

                Defendants.

_____ /

## REPORT AND RECOMMENDATION

On or about April 17, 2018, Plaintiff Michael White filed a 360-page civil complaint in the Genessee County, Michigan Circuit Court, raising numerous claims arising out of injuries his now-deceased wife is alleged to have suffered as the result of her doctor's off-label use of the Defendants' medical device known as an "Infuse Bone Graft device" (the "Infuse device" or "the device"). On May 21, 2018, the Defendants Medtronic Inc. and Medtronic Sofamor Danek USA, Inc. removed the case to this Court on the basis of both diversity jurisdiction, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331 [Doc. #1]. Before the Court is the Defendants Medtronic Inc. and Medtronic Sofamor Danek USA, Inc.'s Motion to Dismiss [Doc. #10], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

## I.   FACTS

Plaintiff previously was part of a class action lawsuit against the Medtronic Defendants that was filed in state court in Missouri. That case was dismissed against Plaintiff and his wife without prejudice.  *Complaint*, ¶ 1.[1]  Plaintiff alleges that on November 24, 2009, his wife, Darla K. White, had spinal fusion surgery using the Infuse device. He alleges that the surgeon who performed the procedure implanted the Infuse device in an "off label" manner, that is, the device was implanted via a posterior rather than an anterior approach, and without an "LT-Cage" component.  *Id*. ¶¶ 996-998. Plaintiff alleges that as a result, Mrs. White's "post-operative period [was] marked by severe and constant lower back and lower extremity pain."  *Id*. ¶ 999.

Plaintiff brings the following claims under Michigan law:

I.      Negligence, ¶¶ 1029-1071.

II.     Negligence Per Se, ¶¶ 1072-1086.

III.    Negligent Misrepresentation, ¶¶ 1087-1098.

IV.     Strict Liability–Failure to Warn, ¶¶ 1099-1116.

V.      Strict Liability–Design Defect, ¶¶ 1117-1147.

VI.     Strict Liability–Manufacturing Defect, ¶¶ 1148-1175.

VII.    Common Law Fraud, ¶¶ 1176-1202

VIII.   Constructive Fraud, ¶¶ 1203-1213.

IX.     Fraudulent Concealment, ¶¶ 1214-1224.

X.      Breach of Express Warranty, ¶¶ 1225-1234.

XI.     Breach of Implied Warranty, ¶¶ 1235-1242.

---

[1] Defendants have submitted a copy of the Missouri complaint as Exhibit 3 to their motion.  It was filed on June 27, 2014 and dismissed without prejudice on April 28, 2017.

XII.    Violation of Consumer Protection Laws, ¶¶ 1243-1264.[2]

XIII.   Loss of Consortium, ¶¶ 1265-1271.

XIV.    Gross Negligence, ¶¶ 1272-1285.

XV.     "Incidental and Consequential Loss Damages," ¶¶ 1286-1287.

XVI.    Disgorgement of Ill-Gotten Gains, ¶¶ 1288-1308.[3]

In their motion, Defendants argue primarily that Plaintiff's claims are preempted by federal law, specifically the Medical Device Act ("MDA"), 21 U.S.C. § 306k(a).  They further argue that all of the state law claims are barred by Michigan's three-year statute of limitations for personal injury and product liability.

## II.    STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court,  construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further,

---

[2] Plaintiff cites consumer statutes from several different states, specifically citing the Michigan statute, M.C.L. § 445.901, *et seq*.  *Id.* ¶¶ 1245, 1257.

[3] Counts XV and XVI are claims for damages, not substantive counts.

"a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555.  Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]'–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

## III.   DISCUSSION

### A.   Preemption

The Medical Device Act ("MDA"), in which Congress exercised its authority under the Supremacy Clause, provides as follows:

> "[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable

-4-

under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter."

21 U.S.C. § 360k(a).

Thus, the MDA preempts any state law claims that impose a requirement of a medical device "different from, or in addition to" those imposed under the statute. *Reigel v. Medtronic, Inc.*, 552 U.S. 312 (2008). However, the Supreme Court has also held that state law remedies are not preempted when state law requirements of duties parallel duties under the MDA. "Nothing in [21 U.S.C.] § 360k denies [a state] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996).

In *Riegel*, the Supreme Court established a two-prong test for determining whether a state claim is preempted under the MDA: (1) determine whether the federal government has established requirements applicable to the medical device; and (2) if so, determine whether the state law claims are based upon requirements with respect to the device that are different from, or in addition to, the federal ones, and that relate to safety and effectiveness. 552 U.S. at 321–22. *See also Aaron v. Medtronic, Inc.*, 209 F. Supp. 3d 994, 1002 (S.D. Ohio 2016); *Hafer et al. v. Medtronic Inc., et al.*, 99 F.Supp.3d 844, 855–56 (W.D.Tenn.2015).

Further complicating the matter is 21 U.S.C. § 337(a), which authorizes the federal government to enforce the MDA. In *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), the Supreme Court found that the text and structure of § 337(a) showed "clear evidence that Congress intended that the MDA be enforced exclusively by the

Federal Government." *Id*. at 352.  In other words, there can be no private lawsuits based on the FDCA (and MDA), because § 337(a) preempts any state tort claim that exists "solely by virtue" of an FDCA violation. *Id*. at 353 ("Implied preemption"). Thus, Plaintiff's claims are preempted to the extent that they are based on the MDA, and likewise if the state law claims impose requirements that are "different from or in addition to" the federal requirements ("express preemption").

In this case, there is no dispute that the FDA has established requirements with regard to the Infuse device, which received pre-market approval ("PMA").[4]  The critical question, then, is whether the Michigan claims invoke requirements beyond those established by the federal government. The short answer, based on overwhelming authority, is "they do," and all of Plaintiff's claims (with the possible exception of the fraud claims, which are dismissible on other grounds) are preempted.

### 1.    Claims Grounded in Negligence and Failure to Warn

As Defendants point out, a number of Plaintiff's claims are premised on allegations that Defendants failed to inform Plaintiff or the physicians of risks and other information, concealed important information, or made fraudulent representations regarding the use of the Infuse device.  Specifically:

Count I (negligence) – based on "duty to fully and adequately warn Plaintiff(s) and or Plaintiff's physicians of the true health and safety risks related to the 'off-label' use of

---

[4] The Infuse device is classified as a Class III medical device by the FDA. *Caplinger v. Medtronic, Inc.*, 784 F.3d at 1340 ("There's no dispute...that device-specific federal requirements apply to Infuse: the device endured the premarket approval process").  "Class III devices like Infuse 'incur the FDA's strictest regulation' and must receive Premarket Approval (PMA) from the FDA before being sold." *Aaron v. Medtronic*, 209 F.Supp.3d at 998, quoting *Buckman*, 531 U.S. at 344.

Infuse." *Complaint*, ¶ 1055.

Count II (negligence *per se*) – alleges that Defendants "did not provide adequate directions and warnings" for Infuse. *Id*. ¶ 1075.

Count III (negligent misrepresentation) – alleges that Defendants made "untrue misrepresentations and omitted material information" regarding the "dangers inhrent to 'off-label' use of Infuse." *Id*. ¶ 1089.

Count IV (strict liability)– alleges that the "warnings accompanying...Infuse...did not adequately warn Plaintiffs and Plaintiffs' physicians." *Id*. ¶ 1584 (numbered out of sequence).

Count VII (common law fraud)–alleges that Defendants "hid or otherwise concealed important helath, safety, and risk information form Plaintiff(s) and/or Plaintiff's physician(s)." *Id*. ¶ 1178.

Count VIII (constructive fraud)– alleges "misrepresentations and material concealment of the actual increased risks and dangers of 'off-label' us of Infuse." *Id*. ¶ 1209.

Count IX (fraudulent concealment)–alleges that Defendants "fraudulently and intentionally concealed and suppressed material and important health and safety product risk information from Plaintiffs and Plaintiffs' physicians." *Id*. ¶ 1215.

Count XII (consumer protection law)– again alleges "fraudulent representations and material omissions to patients, physicians and consumers, including Plaintiffs." *Id*. ¶ 1253.

Significantly, Plaintiff has not alleged that Defendants failed to provide any of the warnings required by the FDA through the Premarket Approval ("PMA") process.  In

effect, the above claims are premised on the theory that Defendants had a duty to provide warnings *different from or in addition to* those required by the FDA. In *Riegel*, the Supreme Court stated that § 360k(a) of the MDA "[s]urely...would preempt a jury determination that the FDA-approved labeling for a [device] violated a state common-law requirement for additional warnings." 552 U.S. at 329. *See also Aaron*, 209 F.Supp.3d at 1004-1005 ("Plaintiffs' failure to warn claims are expressly preempted by 21 U.S.C. § 360k(a). First and most obviously, to the extent that Plaintiff alleges that Defendants were required to give any warning other than those required by the FDA as part of its PMA of Infuse, those claims are expressly denied as being inconsistent with federal law. 21 U.S.C. § 360k(a)").[5] In terms of the preemption of state law negligence actions,[6] the Fifth Circuit in *Gomez v. St. Jude Med. Daig Div. Inc*., 442 F.3d 919, 933 (5th Cir. 2006), held:

> "No negligence claims can be maintained as to devices that complied with the FDA requirements because success on those claims requires a showing that the FDA requirements themselves were deficient. These claims cannot be presented to a jury because, if successful, they would be inconsistent with the federal regulatory requirements."

[5] Claims of failure to provide warnings are different from claims of affirmative misrepresentations–the latter would not be preempted, *see Shouest v. Medtronic, Inc.*, 13 F.Supp. 3d 692, 706 (S.D. Texas 2014), although, as discussed below, they are dismissible on other grounds.

[6] Plaintiff's reliance on the Sixth Circuit's unpublished decision in *Howard v. Sulzer Orthopedics, Inc.*, 382 Fed. App'x 436 (6th Cir. 2010), is unavailing. In *Howard*, the plaintiff alleged that the defendant failed to follow the manufacturing guidelines set forth in the Good Manufacturing Practices ("GMP"), federal regulations based on general manufacturing standards that are applicable to all FDA-regulated medical devices. The Court rejected the defendant's argument that a state action based on violation of the GMP would invoke duties beyond those flowing from the more specific PMA, and reversed the district court's finding of preemption of a negligence *per se* claim. By contrast in the present case, Plaintiff does not argue that the Defendants were in non-compliance with any GMP, but rather grounds his complaint in allegations of off-label use and promotion.

More generally, and more to the point, all of Plaintiff's claims center on the off-label use of the Infuse device, and his allegations that Defendants failed to provide him or his wife's physicians proper information as to the risks and dangers of off-label use. However, " 'off-label' usage of medical devices ... is an accepted and necessary corollary of the FDA's mission to regulate in this area without directly interfering with the practice of medicine." *Buckman*, 531 U.S. at 350.  In *Riegel*, the device at issue was a balloon catheter.  The plaintiff in that case underwent a coronary angioplasty.  In an attempt to dilate the artery, the doctors employed the device in a manner that was contraindicated by the device's labeling–in other words, an off-label use.  The catheter ruptured, resulting in the necessity of emergency coronary bypass surgery.  Nevertheless, the Supreme Court held that the plaintiff's claims, including his failure-to-warn claims, were preempted.  In *Caplinger*, 784 F.3d at 1345, the Court explained *Riegel* thusly:

> "[T]he plaintiff in *Riegel* argued that a medical device was poorly designed for the particular off-label use his doctor made of it. The plaintiff in *Riegel* claimed, too, that the manufacturer failed to provide sufficient warnings about off-label uses. Even so, the Court didn't hesitate to find all of his claims preempted. Once a device endures the premarket approval process, *Riegel* held, any state safety requirement differing from or adding to the body of federal regulations is preempted, even if that requirement comes in the guise of a general tort suit addressing only safety issues relating to off-label uses. See 552 U.S. at 322–24, 128 S.Ct. 999. Indeed, the Court told us unequivocally that '[s]tate tort law that requires a manufacturer's [device] to be safer ... than the model the FDA has approved disrupts the federal scheme. *Id*. at 325, 128 S.Ct. 999. And the Court proceeded to dismiss the plaintiff's design defect and failure to warn claims addressing off-label uses."

Therefore, Plaintiff's claims arising out of his allegations of failure to provide warnings, or insufficient warnings about off-label use of the Infuse device are expressly preempted.  *See Wright v. Medtronic, Inc*., 81 F. Supp. 3d 600, 612 (W.D. Mich. 2015)("[T]he Court agrees that off-label promotion is governed by federal law, which sets

the parameters and occupies the field for deciding whether a representation is false or misleading. Accordingly, Plaintiff's Count I, seeking reimbursement for the injuries she suffered due to the alleged inadequacy of the warnings for an off-label use, is a claim that falls within § 360k protection"); *Thorn v. Medtronic Sofamor Danek, USA, Inc.*, 81 F. Supp. 3d 619, 628 (W.D. Mich. 2015)(same); *Caplinger*, 784 F.3d at 1344 ("But in preserving the liberty of doctors and patients to use approved devices however they wish, Congress also appeared to place a good deal of the risk on them rather than on manufacturers. Knowing about (even encouraging) off-label uses in § 396, Congress proceeded in § 360k(a) to preempt any state tort suit challenging the safety of a federally approved device without qualification about the manner of its use"); *Schouest v. Medtronic, Inc.*, 13 F. Supp. 3d 692, 703–04 (S.D. Tex. 2014)("A successful failure-to-warn claim premised on inadequate labeling would therefore disturb the FDA's policy with respect to the regulation of these devices)(citing *Buckman*, 531 U.S. at 350).

Further, Plaintiff's challenges to the off-label use of the Infuse device do not pass muster as "parallel" state torts. As the Court in *Wright v. Medtronic, Inc*. explained, there is no Michigan law duty to refrain from off-label promotion of a medical device:

> "Further, Plaintiff's Count I does not state a parallel state-law claim because there is no state law duty to abstain from off-label promotion. 'Off-label promotion itself exists only as a creation of the FDCA scheme.' *Hawkins v. Medtronic, Inc*., No. 1:13–CV–00499 AWI SK, 2014 WL 346622, at *19 (E.D.Cal. Jan. 30, 2014) (Hawkins I) ('A state law cause of action cannot rest solely on the off-label promotion of INFUSE.'); see also *Caplinger v. Medtronic, Inc*., 921 F.Supp.2d 1206, 1219–20 (W.D.Okla.2013) ('even the concept of 'off-label use' is a creature of the FDCA, is defined by the FDCA, and is not a part of Oklahoma substantive law'). 'A successful failure-to-warn claim premised on inadequate labeling would therefore disturb the FDA's policy with respect to the regulation of these devices.' *Schouest*, 13 F.Supp.3d at 703–04 (citing *Buckman*, 531 U.S. at 350, 121 S.Ct. 1012). Defendants correctly argue that this lack of a traditional state-law duty to refrain from off-label promotion means that Plaintiff's

-10-

failure-to-warn claim in Count I is also impliedly preempted." 81 F. Supp. 3d at 612.

The Plaintiff also claims that the Defendants violated the FDCA by failing to timely report adverse events. *See Complaint*, ¶¶ 1045(n), 1075(n), and 1104(n).  First, a claimed violation of the FDCA, enforceable only by the government under 21 U.S.C. § 337(a), would be subject to implied preemption under *Buckman*.  In addition, the federal requirement that manufacturers report adverse events to the FDA has no state law analog, and thus there is no parallel state cause of action.  In *Aaron*, 209 F. Supp. 3d at 1004–05, the Court found:

> "Although federal law requires device manufacturers to report certain adverse events to the FDA, there is no state-law duty to report adverse events to the FDA. And the federal duty to report certain information to the FDA is not 'identical' (*Lohr*, 518 U.S. at 495, 116 S.Ct. 2240), and thus not parallel, to the state-law duty to provide warnings to patients or their physicians. See *McClelland v. Medtronic, Inc*., 944 F.Supp.2d 1193, 1199–1200 (M.D.Fla.2013); *McClelland v. Medtronic, Inc*., 2012 WL 5077401, at *6 (M.D.Fla.2012). Because the state-law duty to warn is 'not genuinely equivalent to a duty imposed by the FDCA' (*Pinsonneault v. St. Jude Med., Inc*., 953 F.Supp.2d 1006, 1016 (D.Minn.2013)), Plaintiffs' 'allegations that Medtronic failed to report adverse events to the FDA do not state a parallel claim.' (*Cales v. Medtronic Inc*., 2014 WL 6600018, at *10 (Ky.Cir.Ct.2014)). Doctors are warned of the risks associated with a medical device through the device's labeling, not through adverse-event reports submitted to the FDA."

Finally, in addition to express preemption, all claims related to the off-label use on the Infuse devise and failure to disclose are impliedly preempted under *Buckman*. *See Aaron*, 290 F.Supp. 3d at 1009, fn. 6.

## 2.  Warranty and Consumer Protection Claims

Plaintiff brings claims of breach of express warranty, Count X, ¶¶ 1225-1234; breach of implied warranty, Count XI,  ¶¶ 1235-1242; and violation of consumer protection laws, Count XII, ¶¶ 1243-1264.

As to the express warranty claim, Plaintiff alleges that Defendants encouraged the off-label use of the Infuse devise, and that "Medtronic represented that Infuse was safe and effective, that it was safe and effective for use by individuals such as Plaintiff, and/or that it was safe and effective to treat Plaintiff's condition." *Complaint*, ¶1226.  The express warranty claim is preempted.  In *Gomez v. St. Jude Med. Daig Div. Inc*., 442 F.3d 919, 932 (5th Cir. 2006), the Fifth Circuit, citing the Sixth Circuit opinion in *Martin v. Telectronics Pacing Sys., Inc*., 105 F.3d 1090, 1100 (6th Cir.1997), explained:

> "A jury hearing Gomez's state-law breach of express warranty claim would have to decide whether Kendall's representations about the Angio–Seal were true. Because those representations—including the label, warnings, and IFU—were approved by the FDA through the PMA process, the duties arising under the Louisiana breach of warranty statute relate to, and are potentially inconsistent with, the federal regulatory scheme. The claim is preempted. Accord *Baker v. Medtronic, Inc*., No. 2:99–CV–1355, 2002 WL 485013, at *8 (S.D.Ohio March 28, 2002) ("[E]xpress representations are subject to comprehensive FDA regulation.") (citing *Martin v. Telectronics Pacing Sys., Inc*., 105 F.3d 1090, 1100 (6th Cir.1997))."

For similar reasons, Plaintiff's claims based on breach of implied warranty and Michigan's consumer protection statute are preempted.  In *Baker v. Medtronic, Inc*., 2002 WL 485013, at *8 (S.D. Ohio Mar. 28, 2002), the Court held:

> "As with Plaintiff's claims for defective design and manufacture, this Court concludes that allowing a claim for breach of implied warranty to proceed would impose requirements different from or in addition to those already approved by the FDA under the rigorous premarket approval process for the SynchroMed pump. Consequently, Plaintiff's breach of implied warranty claim is preempted."

Moreover, as Defendants note, "[t]he judicially noticeable FDA-approved labeling for the Infuse device plainly states that '[n]o warranties, express or implied, are made' and that '[i]mplied warranties of merchantability and fitness for a particular purpose or use are specifically excluded." *Defendants' Brief* [Doc. #10], at 45, Pg. ID 481, and

-12-

*Exhibit 2* at p. 3.  As the Court stated in *Aaron*, 209 F.Supp.3d at 1014, "Defendants' explicit disclaimer of all warranties defeats Plaintiffs' breach of express and implied warranty claims."  *See also* M.C.L. §§ 440.2315 and 440.2316(2) (permitting conspicuous disclaimers of implied warranties).

In terms of the Michigan Consumer Protection Act, M.C.L. § 445.904(1)(a) specifically provides that the Act does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." This would of course include the FDCA and the MDA.  *See Duronio v. Merck & Co.*, 2006 WL 1628516, at *7 (Mich. Ct. App. 2006)("Because the general marketing and advertising activities underlying plaintiff's MCPA claim are authorized and regulated under laws administered by the FDA, the exemption in MCL 445.904(1)(a) applies to plaintiff's MCPA claim.").

### 3.    Design and Manufacturing Defects

"To allow a cause of action for design defect where the FDA has specifically approved of the design of the device ... would thwart the goals" of the MDA. *Martin v Telectronics Pacing, Inc.*, 105 F.3d 1090, 1099 (6th Cir. 1997).  *Accord Gomez*, 442 F.3d at 933 (claims of both design and manufacturing defects are preempted).  In *Kemp v. Medtronic, Inc.*, 231 F.3d 216 (6th Cir. 2000), the Sixth Circuit held that premarket approval by the FDA "constitutes approval of the product's design, testing, intended use, manufacturing methods, performance standards and labeling" and constitutes a specific requirement under the MDA. *Id*. at 226-27 (citing *Martin*).  *See also Baker v. Medtronic, Inc.*, at 6 ("[T]o allow Plaintiff's manufacturing defect claim to proceed would, in essence, impose a requirement different from or in addition to that already approved by

-13-

the FDA. Consequently, Plaintiff's claim under § 2307.74 is preempted.").

Thus, Plaintiff's claims based on allegations of design and manufacturing defects are preempted.

### B.   Fraud

Fed.R.Civ.P. 9(b), requires that a claim of fraud "must state with particularity the circumstances constituting fraud." The plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993); *see also Sanderson v. HCA–The Healthcare Co.* 447 F.3d 873, 877 (6th Cir.2006).  In Michigan, a claim of fraud requires the following: "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976). "The absence of any one" of these elements "is fatal to a recovery." Id. (Internal citations omitted). The purpose of Rule 9(b) "is to alert defendants 'as to the particulars of their alleged misconduct' so that they may respond." *Kanouno v. SunTrust Mortg., Inc*., 2011 WL 5984023, *4 (E.D.Mich.2011) (Rosen, J.) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir.2007)).

In this case, Plaintiff's generalized claims of fraud lack the specificity required by

-14-

Rule 9(b).  In ¶ 1177 of the complaint, Plaintiff states, "Medtronic committed fraud by concealing and/or making fraudulent representations during its promotional practices concerning the 'off-label' use of Infuse and/or the 'Unapproved Device' and concealing its practice of 'off-label' promotion."  The Plaintiff then addresses the "specifics" of his claim with a general reference to "the body of the complaint" in ¶ 1178:

> "In connection with their Infuse and/or the 'Unapproved Device' products, Medtronic fraudulently and intentionally misrepresented material and important health and safety product risk information to Plaintiff(s) and/or Plaintiff's physician(s)/medical facility and hid or otherwise concealed important health, safety, and risk information from Plaintiff(s) and/or Plaintiff's physician(s) and/or medical facility, *all as alleged in this Complaint.  The specifics regarding the content of the misrepresentations, when and where Medtronic made them and to whom they were made, as well as what aspects of the statements were misleading and why, are alleged above in the body of this Complaint.*" (Emphasis added).

Yet, as discussed in the preceding sections, Plaintiff's primary issue (as "alleged in the body of the complaint") centers on the off-label use of the Infuse device, and Defendants' alleged failure to either warn Plaintiff and the medical providers, or report adverse information to the FDA.  For example, in ¶ 1182, Plaintiff alleges, "Had Medtronic complied with their duties to the FDA as described under the FDCA, the necessary and resultant actions by the FDA and/or appropriate government agencies would have precluded the use of the product in the surgery giving rise to all causes of action."  However, this is precisely the type of "fraud" claim that is impliedly preempted under *Buckman*.  In *Hawkins v. Medtronic, Inc*., 909 F. Supp. 2d 901, 911 (S.D. Ohio 2012), the Court explained:

> "The Supreme Court has held that a 'state-law fraud-on-the-FDA claim[ ] [would] conflict with, and [is] therefore impliedly pre-empted by federal law.' *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). The Buckman Court explained that the FDA is amply empowered to punish and deter fraud against it, and the agency

uses this authority 'to achieve a somewhat delicate balance of statutory objectives' that 'can be skewed by allowing fraud-on-the-FDA claims under state tort law.' *Buckman*, 531 U.S. at 348, 121 S.Ct. 1012."

Even setting aside the preemption problem, the gist of Plaintiff's fraud claim is that Defendants made misleading or false statements about the safety of off-label use of the Infuse device, or concealed information about the device, to induce physicians–such as his wife's doctors–to use the device. However, this is a "fraud-on-the-market" theory that has no application in a products liability case such as this. In *Martin v. Medtronic, Inc.*, 63 F. Supp. 3d 1050, 1059–60 (D. Ariz. 2014), the Court rejected this theory:

> "Plaintiffs also make a general argument that their amended complaint is replete with allegations that the representations that defendants made that the Infuse device was safe for off-label use were false and that defendants made these representations in order to induce physicians, such as Dr. Pannu, to use the Infuse device off-label. Plaintiffs insist that these allegations support their contention that Dr. Pannu would not have used the Infuse device for Debra's surgery had he known about the significant risk of complications associated with doing so.

> "But these allegations are not tied specifically to Dr. Pannu or to Debra. Rather, these allegations suggest that what plaintiffs are attempting to do here is advance a 'fraud-on-the-market' theory, with the 'market' being the medical community at large. But courts have generally found such theories inapplicable to product liability cases. See, e.g., *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1369 n. 39 (11th Cir.1997) ('The fraud on the market theory of securities law, however, is based on concepts and policies that simply do not apply in a products liability case'). Plaintiffs cannot pursue a 'fraud of the market' theory."

In addition, while Plaintiff asserts general allegations that Defendants made material misrepresentations about the safety of the Infuse device in off-label applications, the complaint is bereft of what specific representations were made, or to whom they were made (other than the general medical community). To comply with Rule 9(b), a plaintiff asserting a claim of fraud must set out "precisely what statements were made in what documents or oral representations or what omissions were made...." *Sanderson*, 447 F.3d

-16-

at 877, quoting *United States ex rel. Clausen v. Laboratory Corp of America, Inc.*, 290

F.3d 1301, 1310 (11th Cir. 2002).  The imprecision of Plaintiff's fraud allegations is

underscored in his response to this motion [Doc. #21], p. 24, Pg. ID 992, where he states,

"Absent specific information to the contrary, Plaintiff *assumes* Dr. LaMarca [Darla

White's surgeon] was a victim of the false, manipulated, or otherwise untrue literature

disseminated by Medtronic." (Emphasis added).

And finally, in his reply brief [Doc. #21 ], p. 22, Pg. ID 990, Plaintiff improperly

posits an "either-or" theory of fraud, in which his wife's doctors were either deceived by

Defendants or colluded with Defendants:

> "If Darla's doctors honestly believed Medtronic's false information was
> true, Medronic is liable, on the other hand, if the doctor was a Medtronic
> consultant acting on behalf of Medtronic, Medtronic is still liable.

> "The thrust of Plaintiff's state-law cause of actions in Medtronic
> intentionally committed fraud, illegally promoted a misbrand adulterated
> dangerous produce corrupting the ability of doctors to generate a well-
> informed professional opinion, or through the use of consulting fees and
> other things of value polluted the ability to generate a well-informed
> decision.  Either Darla's doctor unsuspectingly formed a professional
> opinion from fraudulent information or his opinion was corrupted by
> Medtronic's monetary payments."

Plaintiff fraud claim, therefore, depends on the inconsistent theory that his wife's

doctors both knew and did not know the risks associated with the off-label use of the

Infuse devise.[7]  This violates the Rule 9(b) requirement that fraud be pled with specificity.

_____

[7] Defendants contend that Plaintiff did not specifically plead that his wife's
(unnamed) surgeon had a consulting relationship with Medtronic or was complicit in
concealing relevant information. *Reply Brief* [Doc. #24] at 5, fn. 2, Pg. ID 1268.  This is
true.  Rather, in his complaint, Plaintiff made the general statement that Medtronic made
payments to (unnamed) physicians, who collaborated in the alleged fraud. *Complaint*, ¶¶
1188-89.  However, to the extent that we read this *pro se* complaint liberally to contain an
allegation of collusion, it would run afoul of the discussion laid out in *Aaron*.

This was precisely the issue in *Aaron v. Medtronic, Inc*., 209 F. Supp. at 1015–16, where

the Court dismissed the plaintiff's fraud claim under Rule 9(b):

> "The most glaring flaw in Plaintiffs' fraud claim is that it simultaneously alleges two contradictory sets of facts. On the one hand, Plaintiffs allege that they were defrauded by Dr. Durrani—who Plaintiffs allege was acting as an agent for Medtronic—when he allegedly misled Plaintiffs concerning the safety of Infuse....On the other hand, Plaintiffs allege that Medtronic 'misrepresented the safety of Infuse to...Dr. Durrani'....Thus, Plaintiffs allege that Dr. Durrani simultaneously had and did not have knowledge of the true facts regarding the safety of Infuse.

> "The inconsistent factual statements of the Omnibus Complaint are not saved by the Federal Rules of Civil Procedure's allowance of alternative pleading. While Rule 8(d)(3) allows inconsistent claims—a plaintiff may, for example, bring claims for both intentional and unintentional torts, even where recovery on both would impossible—it does not allow what Plaintiffs are attempting to do here—namely, to make 'clashing factual assertions...in the context of the same claim.' *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 175 F.Supp.2d 489, 492 (S.D.N.Y.2000) (emphasis added) (dismissing fraud claim where plaintiff made contradictory factual allegations as to knowledge).

> "The distinction between inconsistent claims, which are permissible, and inconsistent factual allegations in support of a single claim, which are not, 'is especially pertinent in cases alleging fraud.' *In re Livent, Inc. Noteholders Sec. Litig*., 151 F.Supp.2d 371, 406–07 (S.D.N.Y.2001); cf. *Merchant v. Davies*, 244 F.2d 347, 348 (D.C.Cir.1957) (Rule 8(d)(3) 'creates no exception to the principle that a charge of fraud must be clear and specific.'). Here, whether Plaintiffs claim that they were defrauded by Dr. Durrani acting as Medtronic's agent or claim that Dr. Durrani was defrauded by Medtronic, Plaintiffs' fraud-based claims against Medtronic necessarily depend on what Dr. Durrani knew about the risks associated with Infuse. Yet Plaintiffs simultaneously allege that Dr. Durrani both did, and did not, have knowledge of those risks. These contradictory factual allegations made in support of the same fraud-based claims defeat those claims."

## C.   Statute of Limitations

Defendants argue that Plaintiff's claims are subject to the three-year statute of

limitations for personal injury actions. *Defendants' Motion* [Doc. #10], at p. 28-29, Pg.

ID 477-78. (Citing M.C.L. §§ 600.5805(10) and (13).  Defendants further contend in their

reply brief that "all of Plaintiff's claims are, at bottom, product liability claims that are subject to a three-year statute of limitations." *Reply Brief* [Doc. #24] at p. 7, Pg. ID 1269.

I agree that this case qualifies as a products liability case. MCL §§ 600.2945(h) and (i) define "product liability action" and "production" as follows:

> "(h) 'Product liability action' means an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product.
>
> (i) 'Production' means manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling."

*See Attorney Gen. v. Merck Sharp & Dohme Corp*., 292 Mich. App. 1, 9–10, 807 N.W.2d 343, 347 (2011). Plaintiff's case involves claims that a product–the Infuse device–caused injury resulting form warning (or lack thereof), and especially marketing and advertising of that product. This fits squarely within the framework of the statutory definition of "product liability action." The statute of limitations for products liability cases is three years. *Wickings v. Arctic Enterprises, Inc.*, 244 Mich.App. 125, 147, 624 N.W.2d 197 (2000); *see also* MCL 600.5805(2) ("Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property.").

The statute of limitations runs from the date the claim accrues. *Frank v. Linkner*, 500 Mich. 133, 142, 894 N.W.2d 574 (2017). In *Trentadue v. Buckler Automatic Lawn Sprinkler Co*, 479 Mich. 378, 738 N.W.2d 664 (2007), the Michigan Supreme Court held that absent a specific statutory basis to toll a statute of limitations, the common-law "discovery rule," which provides that a claim accrues when the plaintiff discovers, or

should have discovered a cause of action, is no longer available in the State of Michigan. Rather, a claim accrues on the date the injury occurs. In *Bearup v. General Motors Corp.*, 2009 WL 249456 (Mich. Ct. App. 2009), the Court, noting that "the Supreme Court's recent decision in *Trentadue* has completely eliminated the common law discovery doctrine in Michigan," *id*. at *4, rejected the application of that doctrine in a negligence and product liability action:

> "Plaintiffs' action against defendant is a negligence and product liability action. Because there is no common law discovery rule after *Trentadue*, and the statute does not include a legislatively created discovery rule that applies to plaintiffs' action, plaintiffs cannot invoke the discovery doctrine to toll the running of the statute of limitations." *Id*. at *5.

In this case, the claim accrued at the time of Darla White's surgery, November 24, 2009, since that is the date the injury occurred: the complaint alleges that the "post-operative period [was] marked by severe and constant lower back and lower extremity pain." *Complaint*. ¶ 999. Even assuming that the filing of the Missouri complaint would have tolled any statute of limitations,[8] that complaint was filed on June 27, 2014, so the three-year statute of limitations had already run by that time.

In summary, there are three bases on which the Defendants' motion to dismiss should be granted: (1) the claims are both expressly and impliedly preempted by the Medical Device Act; (2) even if the fraud claims are not preempted, they have not been pled with specificity, as required by Fed.R.Civ.P. 9(b); and (3) the claims are time-barred.

## IV.   CONCLUSION

---

[8] "[T]he statute of limitations is tolled during the time a prior suit is pending between the parties if the prior action is not adjudicated on the merits." *Roberts v. City of Troy*, 170 Mich. App. 567, 581, 429 N.W.2d 206, 213 (1988), citing M.C.L. § 600.5856 (providing that the statute of limitations is tolled during the time that a court has jurisdiction over the defendant).

I recommend that Defendants' motion to dismiss [Doc. #10] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1,"  "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen (14) days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 20, 2019

-21-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on February 20, 2019, electronically and/or by U.S. mail.

<u>s/Carolyn M. Ciesla</u>
Case Manager to the
Honorable R. Steven Whalen